Judith Marti for Petitioner This is a case involving Petitioner Salvador Ramos. Petitioner is only asking for protection under the Convention Against Torture under the Deferral of Removal section. He is not asking for protection under the Withholding of Removal section. So there are no mandatory bars to the Deferral of Removal and therefore his criminal convictions are not relevant to the discussion of whether or not he qualifies for the Deferral of Removal. And therefore we don't need to consider those. He was found credible by the lower court. He's established that he was tortured in the past. He was repeatedly sexually, physically, and emotionally abused from the age of 4 or 5 to the age of 14 when he came to the United States. This is a very sensitive time for the development of a child. He was abused by his father and his fellow students. He was violently raped, beaten, stabbed, left for dead, and permanently disabled when he was 8 or 9 years old. The teenage boys who severely wounded him thought he was dead. They left him disabled with permanent nerve damage and a muscular atrophy in his left leg. He was violently raped again when he was 12 years old by someone he thought was a friend. In Mohammed V. Gonzalez, 400 F. 3rd 785 at 802, the 9th Circuit in 2005 found evidence of past torture that causes permanent and continuing harm alone may be enough to establish automatic entitlement to Convention Against Torture Relief. Although NEXUS is not required for CAT protection, the torturers referred to Petitioner's homosexuality when they harmed him, demonstrating that the reason for the torture was based on discrimination, which is one of the requirements in the definition of torture. How old is your client now? I believe he was born in 1984. I would have to check the record to be sure. So he's in his 30s now. Yes. And your key is you've got to show that, what, it's more likely than not that he would be tortured if returned to Mexico? Yes, Your Honor. And what is your proof of that? Okay. One, we have the past torture. Well, but that was when he was a young child in a very rural area. Exactly. Well, he is homosexual. He is disabled. And he has now been convicted of a drug offense, which would make him an easier target for the police in Mexico. The courts have stated that we have to look at the aggregate risk of torture from all sources. I don't follow why the drug conviction would subject him to increased scrutiny in Mexico. I'm sorry, I can't. I don't follow that last argument you made, why the drug conviction would subject him to increase. Well, there's a problem with drug trafficking in Mexico, and it causes a great deal of violence. And he could easily be subjected to police arrest. It's my understanding the U.S. government will notify the Mexican government about his And therefore, he would be at risk because the authorities would know about that. That's just one factor. As I said, he has an aggregate of risks between those three subjects. But for cat relief, you have to prove that it's more likely than not that he would be subject to torture. He would more likely than not, a 51 percent, yes. And we propose that he's shown and met his burden with that through all the country conditions information that he provided at the time of his case. He has an aunt in Tijuana, does he not? I'm sorry? He has an aunt, a relative in Tijuana. I'm not aware of what his. I thought he had multiple visits, the record shows. I'm not sure of that. I'm considering the case as it sits today in his situation today, which is different. Prior to this, he had a legal residency and a green card. He could pass across his border without any fear because he could reenter again. He lost that green card due to his criminal convictions and therefore his only remedy. The only thing he has keeping him that could keep him in the United States or keep him safe is the deferral of removal. I'm just thinking if he's truly in fear of being tortured, if he was returned to Mexico, why would he be visiting his aunt on multiple occasions? Well, because he's the fear is diminished by the fact that he knows he has the legal authority to cross back into the United States. He's not going deep into Mexico, obviously. But at that time, he had no fear that he would have to remain in Mexico, try to establish a life there, a job, a way to support himself, have contacts with all different types of people. Just visiting an aunt does not make it require him to do all this. Is there any proof in the record that LGBT people are more likely than not to be tortured in Mexico as a general proposition? Well, he already has been tortured. Well, but that was a long time ago. I'm saying currently. He would more likely than not due to his particular circumstances. As I stated before, his circumstances are different than someone who is homosexual but has no disability, has no criminal record that will follow him around. So his particular circumstances are different. I hear you saying that, but I mean, is there any proof in the record to back up your presumptions? Well, there was a referral to human rights violations against disabled persons in my brief. I don't have the exact page, but we did cite to the human rights conditions reports that included persons with disability. Are they tortured or are they more discriminated against? Well, they're denied services. Well, I think there's a recent Ninth Circuit case, and I think there's a recent Ninth Circuit en banc opinion that says at least the circumstances in Mexico would warrant asylum because of the persecution in Mexico that quotes many of our State Department records. And other government reports. Yes, there's copious reports, you know, as I was pointing out from page 240 to 243. So my question is, we've held that the circumstances in Mexico with respect to gay men are such that you could be eligible for asylum, right? We've held that. And bring us Rodriguez en banc? Yes. That's been held in many instances. So is that tantamount to torture, persecution? So how do you make the leap from persecution to torture? Well, there's case law that both says torture is persecution, and then going the other way, that torture is a higher level of persecution. His particular instance is he's already been tortured. He carries that with him for a lifetime. And it would be torture for him to be forced to return there. It's a mental, psychological torture. I think there's very much a physical threat to him and risk if he's there. But he's also being forced to relive those circumstances that he went through. The full time of his childhood in Mexico. There aren't many children that have to endure that. Homosexuals are a little different than other asylum seekers in that even their own parents don't love them. If you're a Muslim or Jewish child and you're being discriminated against for those reasons, your parents don't abuse you or threaten you or hurt you to try to make you to stop being Jewish or Muslim. At least you have, during your childhood, your parents' support and love, hopefully. In these instances, and in instances of these cases, these children, because of their homosexuality, were not accepted by their parents and many times were emotionally, physically, and sexually abused, as this client was. So that's a support system an individual never has. They missed that in their childhood. Now you're asking him to go back there and try to create a life for himself when he's every day looking at the damage that he suffered psychologically, damage he suffered to his body, and the challenges of trying to fit into that society with the risk factors that he has. And yes, there is a threat that he would be tortured, that he would be very vulnerable due to his physical disability. He certainly cannot physically defend himself. There are constant threats and physical attacks on homosexuals in Mexico and he bears that risk. And those attacks include beatings, they include stabbings, they include cutting off genitals. Homosexuals are still very much a target in Mexico. And even the EOIR submitted reports, which are part of the petitioner's case, describing the attacks on homosexuals in Mexico during the time this case was brought. So with those combination of factors, I believe he does meet his burden of 51% that he could be tortured if sent back to Mexico. I also believe that the government acquiesced in his torture. They failed to provide any police or medical services in his small rural area. A reasonable person would conclude that the government was aware that there is lawlessness in a remote rural area. Do you want to save any time for rebuttal? I can. Are there any other questions or points? We have two minutes left for rebuttal. Okay. Thank you. I will. Good morning. May it please the Court. My name is Dawn Conrad, and I'm here today on behalf of the Attorney General. In this case, substantial evidence supports the agency's denial of cat deferral. Although Petitioner suffered severe harm and abuse as a child in his small town in Mexico, the record does not compel the finding that he would more likely than not be subject to future torture in Mexico. As Judge Gilman noted, he returned to Tijuana several times as an adult without harm. He also lived with his aunt for a few months before coming to the United States and was not harmed. This case is distinguishable from the Court's recent decision in Bringas-Rodriguez because Bringas did not address cat relief. And cat deferral requires a higher standard to establish harm rising to the level of torture, government involvement in torture, and a likelihood of future torture. So, I think there's several errors in the BIA's opinion, and I'm not sure they're all adequately raised, but they're troublesome to me. One is, I guess it's a pre-Bringas case, so it applies the wrong legal standards in determining that he failed to show the requisite government acquiescence. Do you agree with that? Specifically, where do you think the board erred? It says the immigration judge did not err in concluding that the respondent failed to establish the requisite government acquiescence to such treatment. I think that is a clear holding of Bringas that would apply to this case. Well, our argument would be that they did not show the requisite government acquiescence. Why? Because there's no evidence that the government was aware of the... Right, and Bringas-Rodriguez says there's no need to report. That's correct, and we're not saying there was a need to report. But in Bringas-Rodriguez, I believe also held that the government of Mexico was unwilling or unable to protect homosexuals before 2004. But the level of knowledge required for, or the level of government involvement required for CAT is greater than that required for asylum or withholding in that you have to show there is some awareness. It doesn't necessarily have to be because it was reported, but there has to be either corruption,  or, you know... Right, the country reports supplied a lot of that evidence. I mean, we had amicus briefs in that case, and there was reports from the UN and from all sorts of agencies talking about abuse of children, of homosexual children, particularly boys, in Mexico.  We're not saying that the government of Mexico was unable or unwilling to protect the petitioners in this case and that case. But our position would still be that there's a little more required. You have to have some sort of knowledge that this was going on, and awareness, not necessarily that they were reported, but some awareness. And these incidents happened in a very small rural town where there was obviously no authority figure actually knew that this was happening. Not his parents, not school officials. But his parents participated in it. His father beat him, that's true. But the acts of sexual violence and abuse that he experienced was at the hands of other individuals in this town. I will also note that even if this court were to consider that there was past acquiescence, because before 2004 the government was unable and unwilling, the situation has changed, and now we're looking forward in this case. And the forward look does not show that there would be government acquiescence to his... Why is that? Because he has... The evidence in this case showed that conditions had improved, at least for homosexuals in Mexico. What way? Well, there has been protections passed. You're talking about legislation? Legislation. Did Ingrid Rodriguez also say that the mere passage of legislation doesn't show that the country conditions have actually changed? Because, in fact, they haven't. Legislation is actually aspirational. I mean, it is legislation, but the conditions, the actual conditions on the ground haven't changed. That's correct, Your Honor, but I think that in this case we do see evidence of more acceptance of homosexuals in specific cities like Mexico City, and I believe there was a city that started with a C. I can't think of any off the top of my head. Let me go to another thing that's troubling about this. Okay. So there's a footnote in the BIA that says, while we are sympathetic to the respondent's history of abuse, he's statutorily ineligible for the asylum, thus he's also ineligible for the humanitarian grant of asylum. Now, why is he statutorily ineligible for asylum? I believe that actually is an error because he is ineligible for asylum because his conviction was a particularly serious crime, but I don't know if that means he's statutorily ineligible. Yeah, and I think also we felt it's not categorically an aggravated felony. That's correct. And both courts seem to assume that it was categorically an aggravated felony. I don't think the court assumed that. I think what happened was the court found that he was charged with a controlled substance offense and the IJ properly applied the modified categorical approach to determine that the underlying conviction involved methamphetamine and found him removable on that basis. But we know that that very statute isn't categorical, and I just don't know. Under discounts, I don't think at that point, unless it's an element of the offense, you can just go look and say, oh, but there is methamphetamine involved. Oh, but this court has held in Sparagon v. United States, which I cited in my 28J letter, that that statute is divisible. The petitioner's statute of conviction, I'm sorry, United States v. Sparagon, 871F3-689-715. Just recently, it's a 2017 case. The court held that California Health and Safety Code 11379 is divisible with regard to both its controlled substance requirement and its actus reus requirement. Okay. Well, I will look at that. But I don't think he's statutorily ineligible for humanitarian relief. Do you agree with that? I believe that he would have a particularly, I mean, his conviction would be a particularly serious crime, which would render him ineligible for humanitarian asylum. That's not what the BIA or the IJ held. Well, that's because below, petitioner conceded that he was not eligible for asylum. I know. That's problematic, right? Yes. Because there's a concession that's not actually accurate. Well, that's what petitioner conceded, and then he didn't challenge that finding before the board. Let's see. Also, the board's interpretation of country conditions evidence, and the board did find in this case that the country conditions, while showing discrimination, that discrimination still continues, that the country conditions did not show that he would more likely than not be tortured in the future. And I would continue to note that he, again, returned to the court multiple times after he became an LPR, and there was no evidence that those had been part of him in the past or had any continued interest in him. Are there any further questions? If not, I'll respectfully ask the court to deny petitioner purview. Thank you. Thank you. As to the issue of acquiescence, as I stated, a reasonable person would conclude that the government was aware that there is lawlessness in remote areas. Every society knows that humanity has a capacity to be cruel, and therefore it's the purpose of government to provide institutions like schools, medical services, police services to assist their population. They are also supposed to educate their populace about human rights issues, and they totally failed to do that here. We don't have a challenge to the aggravated felony decision here? I believe that he had a sentence greater than one year, which is a bar to asylum. If you have a conviction with a sentence of one year or more, that's considered an aggravated felony and a bar to asylum. Were you the attorney below? I beg your pardon? Were you the attorney below? Yes, I was. Is that why you conceded that it was an aggravated felony? The government produced conviction documents, and like I said, it's statutory and regulatory in regarding to that particular bar is a mandatory bar. There was also an issue – well, it would not have been as great an issue, obviously, that he applied late because he had a green card, so I could have argued that issue if that had been the reason for the denial of an asylum. But due to his criminal record, it would be barred because of it. It's defined as an aggravated felony any time there's a conviction of one year or more. All right, thank you, Kathy. May I? I'm sorry. Yes, you have a few seconds. I just wanted to point to the due diligence issue for governments to provide protection regarding the acquiescence. It's in the brief on page 41. Thank you. Thank you so much for your attention. Thank you. Case is argued will be submitted.
judges: Gilman, Reinhardt, Wardlaw